**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **GARY D. EPPLE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:16-cv-01505-C** |
| | § | **JURY** |
| **BNSF RAILWAY COMPANY,** | § | |
| **Defendant** | § | |

**PLAINTIFF'S MOTION IN LIMINE**

AND NOW comes the Plaintiff, Gary Epple, and he moves the Court for an Order directed to all counsel and all parties and witnesses, that excludes and prohibits the following identified subjects from being conveyed in any manner to the jury, whether by statement, arguments of counsel, *voir dire*, questions to witnesses, or by presentations of testimony or any other evidence, or otherwise.

**1. *DATE WHICH PLAINTIFF FIRST HIRED AN ATTORNEY***

The time or circumstance under which the Plaintiff employed an attorney who has ever represented him in connection with these matters, and any conversations or transactions between said attorney and Plaintiff is not relevant.

GRANTED _____ DENIED _____

**2. *PRIOR AND/OR SUBSEQUENT INJURIES, ILLNESSES OR ACCIDENTS***

Any previous and/or subsequent injuries, illnesses or accidents allegedly suffered by Plaintiff before 8/21/04, as any would be irrelevant. Plaintiff requests that before attempting to introduce into evidence and/or refer to any such alleged evidence, that the defense first make an offer of proof outside the presence of the jury that; (a) such evidence is relevant in this case; and (b) that

the relevance of such alleged evidence is not outweighed by the prejudicial effect. OSHA's findings were focused only on three disciplinary incidents: 8/21/04, 3/02/08, and 9/24/10. [See page 2 of OSHA's findings]

GRANTED _____ DENIED _____

**3. *ADMISSIBILITY OF PHOTOGRAPHS, ETC. DETERMINED OUTSIDE JURY PRESENCE***

That should the Defendant wish to introduce any photographs, videotaped productions, or motion picture film into evidence, the same be tendered to Court and opposing counsel, outside the presence of the jury, and shown or exhibited to determine its relevance and suitability for introduction into evidence by the Defendant

GRANTED _____ DENIED _____

**4. *PRIOR CLAIMS AND/OR LAWSUITS INVOLVING PLAINTIFF***

Whether or not the Plaintiff has ever made prior claims for money for injuries of any nature, or whether or not said claims for money for injuries of any nature, or whether or not said claims resulted in settlement or lawsuits being filed or tried. Note: This request goes beyond the previous Motion in Limine regarding any actual or alleged injuries of Plaintiff. In the event the Court should find that such injuries should be admitted into evidence, then any evidence as to whether any claim or suit arose from such injury should be excluded as such evidence would have no relevance, or; alternatively, any possible relevance would be substantially outweighed by the prejudicial effect.

GRANTED _____ DENIED _____

**5. *SUPERSEDED PLEADINGS***

The contents of any pleadings/discovery responses that have been superseded by the current pleadings/discovery responses on file in this case.

GRANTED _____ DENIED _____

**6. *LISTED WITNESSES ONLY***

Any attempt in front of the jury by Defendant or Defendant's counsel to call as a witness, either directly or through records, any person or entity not properly and timely identified in Defendant's responses to requests for disclosure.

GRANTED _____ DENIED _____

**7. *COLLATERAL SOURCE(S) OF BENEFITS***

That Plaintiff has received, has been entitled to receive, will receive, or will become entitled to receive benefits of any kind or character from a collateral source, including but not limited to such collateral source benefits as the following:

a) Benefits from collateral insurance coverage, including homeowners insurance, automobile insurance (PIP, UM/UIM, collision coverage, etc.), and health insurance

b) Social Security and Pensions

c) Compensation for time not actually worked, including sick leave and vacation time

d) Services furnished without charge

e) Worker's Compensation

f) Medicare or Medicaid benefits

g) Benefits under private group insurance policy

h) Benefits under insurance policies generally

i) Benefits from voluntary contribution by the employer of Plaintiffs

j) Benefits from sick leave and/or vacation

k) Benefits from the Federal Government, including Railroad Retirement Board sickness benefits, Railroad Retirement Board disability annuity and/or retirement benefits, and Social Security Medicare insurance

*See Eichel v. New York Central Railroad*, 375 U.S. 253 (1963);
*Azar Nut Co. v. Caille*, 720 S.W. 2d 685 (Tex.App. - El Paso 1986), affd, 734 S.W.2d 667 (Tex. 1987)

l) Benefits from pensions

m) Medical Charities.

GRANTED _____ DENIED _____

### 8. *ANY SUGGESTION OF OTHER LAWSUITS*

There should be no suggestion of other lawsuits by Plaintiff, including his FELA suit. Any such suggestion would be irrelevant, would constitute inadmissible character evidence, and, to the extent such evidence is relevant, its probative value is substantially outweighed by the unfair prejudice to Plaintiff and the likelihood that the jury would confuse the issues. *See* Rules 401, 402 and 403 TRE.

GRANTED _____ DENIED _____

### 9. *OTHER ACTS*

No suggestion should be made regarding the fact that there have been no other injuries to employees, or no other employees have claimed an injury and reported it to the Defendant related ballast in the Amarillo yard as it does not form a direct basis for Defendant's claims in this lawsuit. This includes any reference to or questions elicited from witnesses to the effect that they have never complained about an injury from working on ballast or made a claim that their job has caused injury. *See* Rules 401, 402, and 403 TRE.

GRANTED _____ DENIED _____

**10. *ANY SUGGESTION THAT PLAINTIFF FAILED TO PRODUCE DOCUMENTS***

No suggestion should be made that Plaintiff has failed or refused to produce requested documents. Any such reference is inherently prejudicial as it could suggest or imply that Plaintiff has acted improperly by seeking to prohibit production of certain documents. *See* Rules 401, 402, 403 TRE.

GRANTED _____ DENIED _____

**11. *ABSENT WITNESSES***

No reference should be made to the jury about the probable testimony of a witness who is absent, unavailable or not called to testify in this cause, nor should any reference be made to Plaintiff's not calling live at trial, or by deposition, any person who is not being called. *See* Rules 401, 402, 403 TRE.

GRANTED _____ DENIED _____

**12. *ANY SPECULATIVE TESTIMONY REGARDING CAUSATION OF THIS INCIDENT***

Any speculative testimony about the cause of Plaintiff's injuries should be barred from introduction at trial. Testimony regarding causation therefore must be introduced through an expert witness. Causation is not an issue in this case. Consequently, any witness that does not possess the necessary scientific background and whose opinion is not based on reliable scientific methods should be barred from testifying regarding causation of Plaintiff's injury. *See* Rules 401, 402, 403 TRE.

GRANTED _____ DENIED _____

**13.** ***ANY TESTIMONY REGARDING PENSION AND/OR RETIREMENT***

That Plaintiff could qualify for full pension benefits at age 60 or that other unnamed railroad employees do so. See *Brumley v. Federal Barge Lines, Inc., 78 Ill.App.3d 799, 396 N.E.2d 1333 (5th Dist. 1979)* (fact that river pilot could retire with full benefits at 65 inadmissible as collateral source in Jones Act case); *Greisser v National Passenger Railroad Company*, 761 A.2d 606 (Pa. Supp. 2000) (evidence of qualification for retirement benefits at age 60 properly excluded as collateral source in FELA case); *Norfolk Southern Railway Company v. Tiller*, 944 A.2d 1272 (Ct.App.Md. 2008) (Same as *Brumley and Greisser*). Such evidence is speculative, irrelevant and violates the collateral source rule because of the danger that the jury would use it to mitigate Plaintiff's damages or reduce the railroad's liability. See *Eichel v. New York Central Railroad Co*., 375 U.S. 253, 84 S.Ct. 316 (1963) holding Railroad Retirement benefits are inadmissible for any purpose.

GRANTED _____ DENIED _____

**14.** ***ANY TESTIMONY THAT RAILROADING IS SAFE***

Defendant should be precluded from suggesting or alluding to the fact that railroading is safe, or a safe industry, or other similar facts or contentions as they would be irrelevant, unfairly prejudicial, irrelevant, and would in their prejudicial effort to substantially outweigh any probative value such reference might have. *See* Rules 401, 402, 403 TRE.

GRANTED _____ DENIED _____

**15.** ***PRIOR RULINGS***

That no mention be made of any action taken by the Court in ruling upon any matter prior to the actual trial of this cause, including but not limited to mention of motions made or rulings made thereon concerning discovery disputes, or that the pleadings or other matters filed by the Plaintiff herein were in a particular form or of a particular nature.

GRANTED _____ DENIED _____

**16.** ***ANY TESTIMONY REGARDING EMPOWERMENT OR THE EMPOWERMENT RULE***

That Plaintiff had a right to refuse to perform the assigned work if he thought he was not properly equipped. In FELA litigation, this is known as the "Empowerment Rule." Defendant may also seek to elicit testimony that, if Plaintiff felt he needed help that his supervisors were not providing, he should have sought the intervention of his union representatives. This is impermissible under the FELA.

Defendants in FELA cases may not use the doctrine of assumption of the risk as a defense. *See* 45 U.S.C. § 54 (West 2011). Although the FELA initially allowed use of the defense, "every vestige of the doctrine... was obliterated from the law by the 1939 amendment." *See Faushauer v. N.J Trans. Rail Op., Inc.*, 57 F.3d 1269, 1274 (3d Cir., 1995), quoting *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 57 (1943)).

When considering the admissibility of evidence in FELA actions, courts must distinguish between two similar doctrines: assumption of the risk and contributory negligence. Although assumption of the risk is not available as a defense, contributory negligence is generally available. *See Fashauer,* 57 F.3d at 1275. The two doctrines have been distinguished in the following way:

> [A]n employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. Contributory negligence, in contrast, is a careless act or omission on the Plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist. *Id.*

Thus, in this case, any argument that Plaintiff's injuries were his own fault due to his knowledgeable acceptance of a dangerous condition that was necessary for him to perform his duties should be barred as an improper assumption of the risk argument. Furthermore, any evidence that relates exclusively to such an argument should also be barred as irrelevant.

Any evidence that Plaintiff was "empowered" to refuse his work would suggest that Plaintiff assumed the risk of completing certain tasks by failing to refuse to complete them. Since assumption of the risk defenses are unavailable in FELA cases, the court should bar all evidence or argument that the Plaintiff could or should have refused to complete tasks at work.

Courts have rejected defenses similar to the Defendant's empowerment program defense. In *Birchem v. Burlington Northern R.R. Co.*, 812 F.2d 1047 (8th Cir., 1987), an employee brought a FELA action for two injuries. In one incident, he was injured due to his use of a tool that he knew was defective when he used it. *Id.*, at 1048. In the other incident, he was injured when a door which he failed to close properly while carrying garbage swung open and struck him. *Id.* The defendant proffered jury instructions that would have allowed the jury to consider the testimony as evidence of the plaintiff's contributory negligence. *Id.*, at 1050. The trial court denied the proffered instructions, and the Eighth Circuit affirmed. *Id.* The court held that the injuries were caused by the plaintiff's compliance with routine assignments by his employer, and any argument that the plaintiff was at fault for such compliance constituted an assumption of the risk argument. *Id.*, at 1049. Because the FELA does not allow assumption of the risk defenses,

the proffered instructions were improper. *Id.*, at 1049. The defendant's effort to characterize the evidence as contributory negligence was nothing more than an attempt to circumvent Congress's ban on the assumption of the risk defense. *Id*.

The Supreme Court has expressed the importance of closely scrutinizing contributory negligence arguments in FELA cases because, otherwise, the plaintiff's "rights will be sacrificed by simply charging him with assumption of the risk under a different name." *Tiller,* 318 U.S. at 58.

In this case, evidence of Defendant's "empowerment" program, or any other evidence that Plaintiff could or should have refused to complete his tasks if he felt they were unsafe, supports only an assumption of the risk defense, a defense that is unavailable under FELA. Thus, such evidence should be barred, as it is not relevant to any issue in the case. Moreover, admitting evidence of the "empowerment" program would be prejudicial to the Plaintiff because it might confuse the jury by suggesting that the Plaintiff had a responsibility to refuse to perform unsafe work, which he clearly does not under the FELA.

GRANTED _____ DENIED _____

**17. *ASSUMPTION OF RISK AND CONTRIBUTORY NEGLIGENCE UNDER THE ACT***

It is extremely important to keep in mind the difference between assumption of the risk and contributory negligence in a FELA action. Assumption of the risk is an impermissible defense under the FELA 45 U.S.C. § 54; *Tiller v. Atlantic Coastline RR.* Co., 318 U.S. 54, 63 S.Ct. 444 (1943). Thus, plaintiff's right to recover damages is not affected if his conduct is found to have constituted an assumption of the risk. *Koskorek v. Pennsylvania RR. Co.,* 318 F.2d 364, 367 (3rd Cir. 1963), reh'g denied (1963)

.

On the other hand, contributory negligence is applicable under limited circumstances in FELA actions. Section 3 of the Act provides that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." 45 U.S.C. § 53. Thus, an employee's contributory negligence does not bar recovery, but merely reduces a jury's award by an amount in proportion to the negligence apportioned to the employee. *Jamison v. Encarnacion,* 50 S.Ct. 440, 442 (1930); *Taylor v. Burlington Northern RR. Co.,* 787 F.2d 1309, 1314 (9th Cir. 1986).

The problem arises in FELA actions when a defendant railroad attempts to introduce evidence of assumption of the risk masquerading as contributory negligence. The Supreme Court recognized this danger in one of its first cases interpreting the 1939 amendment to the Act. *See Tiller,* supra. In the present case, this Court will need to carefully scrutinize the facts to make certain evidence of assumption of risk is not argued, or presented, as contributory negligence. For the reasons articulated below, Plaintiff's conduct amounted to an assumption of the risk and there is no

credible evidence supporting a claim for contributory negligence.

**a. *Distinguishing assumption of risk from contributory negligence in an FELA action***

The United States Supreme Court has long recognized the importance of distinguishing the concepts of assumption of risk from contributory negligence in FELA actions. *Pryor v. Williams,* 254 U.S. 43 (1920). *Tiller v. Atlantic Coastline,* supra. The defenses are not interchangeable and the distinction is critical since one, but not the other, reduces plaintiff's recovery. *Owens v. Union Pacific RR. Co.,* 319 U.S. 715, 724 (1943).

The Ninth Circuit succinctly captured the distinction between assumption of the risk and contributory negligence:

> At common law an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. See Prosser and Keeton on the Law of Torts Sec. 68, at 480-81 (W.P. Keeton, 5th ed., 1984). Contributory negligence, in contrast, is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist. *See, Id.* Sec. 65, at 451-452. Defenses once embraced substantially within the concept of assumption of risk are barred under the FELA and may not be revived in the form of contributory negligence. Where an act of alleged contributory negligence is but the practical counter part of assumption of risk, it does not constitute a defense. *Tiller,* 318 U.S. at 58, 63 S.Ct. at 446 ... The employee who enters the workplace for a routine assignment in compliance with the orders and directions of his employer or its supervising agents, who by such entry incurs risks not extraordinary in scope, is not contributorily negligent, but rather is engaging in an assumption of risk.

*Taylor v. Burlington Northern RR. Co.,* 787 F.2d 1309, 1316 (9th Cir., 1986). Thus, the key in determining whether there is an assumption of the risk or contributory negligence on the part of a railroad employee is to analyze whether that employee was merely complying with his employer's orders and directions when performing his assigned job without adding any additional risk or danger.

An Eighth Circuit case is especially instructive on the type of evidence that is insufficient to support a railroad's contributory negligence defense in a FELA action. In *Wilson v. Burlington Northern, Inc.,* 670 F.2d 780 (8th Cir., 1982), cert. denied, 457 U.S. 1120 (1982), the plaintiff brought a FELA action when he was injured assisting three co-workers place a pan under a hopper car. *Id.,* at 781. The plaintiff suffered a second injury when he stood up after being on his hands and knees hammering a chute into alignment on a railcar. *Id.,* at 781-82. The issue of contributory negligence was submitted to the jury, and the jury returned a general verdict against the plaintiff. *Id.,* at 782.

On appeal, the plaintiff successfully argued that the trial court erred in submitting the issue of contributory negligence to the jury. *Id.* The railroad contested the plaintiff's argument by asserting that the issue of contributory negligence was properly submitted to the jury, relying on

evidence: (1) that a jack was available for installing the pan, and the plaintiff simply chose not to use it; (2) that the plaintiff could have asked for additional help to carry the pan if he believed it to be dangerous; and (3) as to the second injury, that he failed to follow his doctor's orders and restrictions when he performed his assigned job. *Id.* at 782-83.

The Eighth Circuit rejected the railroad's argument by reasoning that the jack had not been used for over a year prior to the accident to install pans, and that the plaintiff and co-workers followed the procedure used by the defendant to manually install the pans. *Id.*, at 783 (emphasis added). The reviewing court also relied on the fact that the defendant's argument "simply [was] not consistent with the realities of the work place." The plaintiff was asked to assist in installing the pan, and "[a]s was the custom at the Burlington Northern, he complied with the request." *Id.*

The Eighth Circuit ultimately held that the trial court erred in submitting the issue of contributory negligence to the jury by stating:

> Under the circumstances present here, Wilson's decision to help carry the pan was not a matter of free choice nor was it in any way unreasonable. He was simply doing his job and assisting other employees in need of help as the railroad fully expected him to do. *Id.*

Applying the Taylor test and the reasoning in *Birchem and Wilson* to the pending case, Plaintiff's conduct clearly falls within the sphere of an assumption of the risk, and outside the sphere of contributory negligence. Plaintiff performed his assigned job utilizing the procedures, orders and directions of the railroad. He was simply doing his job as the railroad fully expected him to do. He did nothing to add any new or additional dangers to his assigned job.

GRANTED _____ DENIED _____

**18. *TO EXCLUDE EVIDENCE OF PLAINTIFF'S LAWSUIT UNDER THE FEDERAL EMPLOYER'S LIABILITY ACT AND RELATED EVIDENCE AND TESTIMONY***

Plaintiff has a pending FELA case on file in Johnson County, Texas, for the damages arising out of his on the job injury on 9/24/10. C.A. No 201200142.

GRANTED _____ DENIED _____

**19.** ***TO EXCLUDE DEFENDANT'S CLAIM THAT PLAINTIFF FAILED TO MITIGATE DAMAGES***

Prior to making a failure to mitigate damages argument, Defendant should be made to adduce evidence that Mr. Epple did not actively seek employment with Defendant BNSF and other employers, and show that the contention is in good faith and supported by evidence.

GRANTED _____ DENIED _____

**20.** ***ANY MENTION OF TESTING POSITIVE FOR OPIATES OR HAVING A DUI CONVICTION***

Plaintiff requests that any conviction of DWI or DUI is irrelevant to any issue in this case, as would be a positive opiate test result. The same would be confusing and prejudice would outweigh probative value.

GRANTED _____ DENIED _____

**21.** ***ANY TESTIMONY OR ARGUMENT THAT PLAINTIFF FAILED TO BE ALERT OR ATTENTIVE TO HIS WORK OR WAS NEGLIGENT***

BNSF admitted through its witness Ron Jackson, a corporate designee under Rule 30 B 6, that the investigation is supposed to determine if the rules were broken and by whom. (Jackson Depo. Vol 1, Page 30, line 20).

This never happened.

BNSF did not investigate whether the track inspector, or the roadmaster (manager of maintenance of way for the yard), had failed in their duties to pick up wood and debris in the yard where the incident occurred. (Corporate designee, 30 B 6 witness Ron Jackson. (Jackson Depo. Vol 1, page 44, line 3 to 44, line 16).

The responsible parties were not investigated.

Mr. Jackson testified that BNSF does not know if it was determined what caused the injury. (Jackson Depo., vol. 1, page 45, line 14).

BNSF does not know what caused the injury.

In addition, Mr. Jackson's testimony was taken on 10/09/17, pursuant to court order to answer questions 8, 14, 15, and 16 in Plaintiff's 30 B 6 notice of BNSF.

After careful consideration, this court ordered BNSF to explain "Why" BNSF managers were not disciplined for failing to enforce the rules listed in chronology at pages 6, 7, 8, and 9. When asked the following question, BNSF's witness testified as followed:

Q. (BY MR. MORGAN) I know. But you -- you have testified, as an upper management person and spokesperson for BNSF, that a reasonable thing to do would be to get it -- get it cleaned up that day so nobody else has to be confronted with that mess?

A. I would expect that, yes.

Q. All right. So the question in the deposition notice: Why BNSF managers were not disciplined for failing to enforce the following rules. Did you investigate and ask questions why Mr. Teel or Mr. Atkins or Mr. Sergas were not disciplined for failing to, number one, keep the yard clean and, number two, get it cleaned up promptly?

A. Did I? I did not, no.

Q. But part of what the judge ordered here is for BNSF to come to the deposition and explain why the BNSF managers were not disciplined for failing to follow these rules. Did you do anything to try to get an answer to that question?

A. **No, I did not.** (Emphasis added by movant).

(BNSF witness Jackson Depo. at page 68, lines 24-25 and Page 69, lines 1-16).

Plaintiff submits this is sanctionable misconduct and the appropriate sanction is to prevent BNSF from presenting *any evidence on direct, cross, opening, or closing* that Plaintiff was in any way unsafe or inattentive in doing his work.

Mr. Atkins was one of Mr. Epple's bosses and testified that he did not blame Mr. Epple for his injury, an admission by the BNSF that Mr. Epple was not at fault in causing his injury. (Depo. page 116, lines 2-7).

GRANTED _____ DENIED _____

**I**

Plaintiff respectfully requests that a ruling be made on any objections made by either party during the taking of depositions in this case before any proceedings are made before the jury.

**II**

Further, Plaintiff requests that if opposing counsel proposes a theory of admissibility concerning the matters set forth above, that the Court order that opposing counsel must first request a ruling from the Court outside the presence and hearing of all prospective jurors and jurors ultimately selected in this cause.

**III**

Further, Plaintiff requests that the Court require counsel for Defendant inform each and every witness called by such counsel prior to calling such witness and out of the presence and hearing of the jury, of the Court's ruling on each of the above matters and that such witness be informed of the matters of which he/she is not allowed to mention and/or testify pursuant to the Court's ruling on this motion.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully request this Court to grant its Motion in Limine as to all paragraphs set forth above.

    Respectfully submitted,

    /s/ Gregory G. Paul
    GREGORY G. PAUL
    Attorney in Charge
    Morgan & Paul, PLLC
    TX No.: 24054974
    SD TX Number:   867758
    618 Beaver Street, Suite 202
    Sewickley, PA    15143
    (412) 259-8375
    (888) 822-9421 (facsimile)
    gregpaul@morgan-paul.com

    S. REED MORGAN
    Law Offices of S. Reed Morgan

        P.O. Box 38
        Comfort, TX 78013
        (830) 995-2464
        (830) 995-2728 (facsimile)
        rmtrialfirm@gmail.com

        Attorneys for Plaintiff